550 F.2d 1220
 77-1 USTC P 9348
 AMERICAN ACCEPTANCE CORPORATION, Plaintiff-Appellee,
v.
GLENDORA BETTER BUILDERS, INC., Lem L. Stroud, and Beatrice
Stroud, Defendants,
and
Sovereign Industries, Inc., Defendant-Appellee,
and
United States of America, Intervenor-Appellant.
 No. 75-1515.
 United States Court of Appeals,
Ninth Circuit.
 March 30, 1977.
 
 W. Francis Wilson, Beverly J. McConnell, Wilson, McConnell & Moroney, Phoenix, Ariz., submitted brief for appellees.
 Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Gilbert E. Andrews, Chief, Appellate Section, Karl Schmeidler, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for intervenor-appellant; William C. Smitherman, U. S. Atty., John F. Flynn, Asst. U. S. Atty., Phoenix, Ariz., submitted brief.
 Appeal from the United States District Court for the District of Arizona.
 Before CHAMBERS, CARTER and ANDERSON, Circuit Judges.
 JAMES M. CARTER, Circuit Judge:
 
 
 1
 This case involves a conflict between a tax levy and a judgment creditor's lien. The United States (the "IRS") appeals from a judgment on the pleadings in which the district court refused to enforce the IRS tax levy against Sovereign Industries, Inc. ("Sovereign"), the debtor of taxpayers Lem and Beatrice Stroud. We reverse and remand.
 
 Facts
 
 2
 In 1967 the IRS made an assessment against taxpayers Lem and Beatrice Stroud of more than $22,000 in income tax for the year 1959. Notice of the assessment and demand for payment were made at the same time. A tax lien was filed with the appropriate recording office in 1968. Most of the tax remains unpaid.
 
 
 3
 American Acceptance Corporation obtained a judgment for $78,000 against the taxpayers in late 1968. That judgment was renewed in 1972.
 
 
 4
 From 1968 to 1972 taxpayer Lem Stroud was employed by Sovereign. Sovereign admits it owes Stroud $27,000 for compensation accrued during this period. In 1970 the IRS served a notice of levy on Sovereign. This notice stated that all property and rights to property belonging to taxpayer in Sovereign's possession were "levied upon and seized" to satisfy the unpaid 1959 assessment and demanded that such property be surrendered to the IRS. Additional notices of levy were served on Sovereign in 1971, 1972, and 1973, but no response was ever made to them.
 
 
 5
 In April 1972 the IRS mistakenly released the tax lien arising from the 1959 assessment. In June 1972 American Acceptance commenced garnishment proceedings by serving a writ of garnishment on Sovereign. In February 1973 the IRS revoked its release of the lien and notified taxpayers of this revocation.
 
 
 6
 In May 1973 American Acceptance and Sovereign stipulated in the garnishment proceedings that Sovereign owed taxpayers $27,000. The parties acknowledged the competing claims to the money made by American Acceptance and the IRS and agreed to join the IRS as a party to resolve the dispute. Subsequently the IRS was granted leave to intervene. Shortly thereafter both the IRS and American Acceptance moved for judgment on the pleadings.
 
 
 7
 The district court entered judgment on the pleadings for American Acceptance. The court held that the notices of levy did not affect a transfer to the IRS of the money owed by Sovereign to taxpayers because the IRS had not actually enforced its levy. Moreover, because American Acceptance's writ of garnishment was served after the IRS had released its lien but before its lien was reinstated, the writ had priority over the lien. The IRS has timely appealed that decision.
 
 Effect of the Levy
 
 8
 The sole issue on appeal is whether the notices of levy served on Sovereign deserve priority over the subsequent writ of garnishment even though the tax lien was released before the writ of garnishment issued. The district court held that they did not deserve priority because the IRS had not actually enforced its levies before its lien was released and the writ of garnishment was served. The IRS urges reversal because it claims its notices of levy effectively transferred to it by operation of law any money owed by Sovereign to the taxpayers. It also argues that its erroneous release of the tax lien had no effect upon the prior notices of levy.
 
 
 9
 The levy is a summary administrative tool for the collection of delinquent taxes. 26 U.S.C. § 6331(a) gives the IRS the following power to levy:
 
 
 10
 "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."
 
 26 U.S.C. § 6331(b) defines a levy as:
 
 11
 "the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof."
 
 
 12
 The IRS's regulations provide that a levy is effective upon serving notice of the levy. 26 C.F.R. § 301.6331-1(a). Repeated notice was served upon Sovereign in this case.
 
 
 13
 The Supreme Court recently analyzed the effect of a notice of levy in Phelps v. United States, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). When faced with the competing claims of the IRS and a receiver in bankruptcy, it held that the IRS's notices of levy served before bankruptcy gave the IRS "full legal right" to the money as against the receiver's claim. Id. at 337, 95 S.Ct. 1728. It further held that "actual possession" of the money was not necessary because "Historically, service of notice has been sufficient to seize a debt, and notice of levy and demand are equivalent to seizure." Id. at 336-37, 95 S.Ct. at 1732 (citations omitted). Accord, United States v. Pittman, 449 F.2d 623, 627 (7 Cir. 1971); United States v. Eiland, 223 F.2d 118, 123-24 (4 Cir. 1955).
 
 
 14
 Phelps, filed after the district court's judgment below, controls in this case. When the notices of levy were served on Sovereign, they had the effect of seizing taxpayer's property held by that company. A custodial relation was then established, with Sovereign holding the property of and for the IRS. No subsequent party could gain any rights in this property from Sovereign because the property no longer belonged to Sovereign. All rights were held by the IRS.
 
 Release of the Lien
 
 15
 This result is not changed by the subsequent release of the lien. 26 U.S.C. § 6331(a) provides that a levy may be made on either property belonging to the taxpayer or subject to a tax lien. These provide two alternative bases for a tax levy, either of which will support the levy independent of the other. A tax lien is not required. See United States v. Mitchell, 349 F.2d 94, 98-99 (5 Cir. 1965).
 
 
 16
 The only prerequisites to a levy are an assessment, notice and demand to pay the tax, and a failure to pay the tax within 10 days after notice and demand. It is undisputed that those requirements were met here. The levy operated as a seizure; a lien is a security interest. Therefore, the subsequent release of the lien is irrelevant.
 
 Conclusion
 
 17
 Not having the benefit of the Phelps decision, the district court erred in determining that the writ of garnishment has priority over the tax levy. The judgment is reversed and the case remanded for proceedings consistent herewith.
 
 CHAMBERS, Circuit Judge, concurring:
 
 18
 This is not the same case, but the implications of the old case of Federal Crop Insurance v. Merrill, 332 U.S. 380, 68 S.Ct., 1, 92 L.Ed. 10 (1947), lead me to concur.
 
 
 19
 There government agents had done something beyond their authority. The loss to Merrill was horrendous, but the government was saved from the act of its ignorant agents. Here the act of the revenue agent must likewise have been that of an agent ignorant of the true facts.
 
 
 20
 This can be only dictum, but I would come out the other way if American were a bona fide purchaser for value. American was bona fide enough, but it was not a purchaser for value of Stroud's claim against Sovereign. It got its garnishment lien only by the gamble of some court costs and attorneys' fees. If American had purchased for value the Stroud claim believing the IRS lien extinguished by the release, I would rule in favor of American.
 
 
 21
 J. BLAINE ANDERSON, Circuit Judge (dissenting):
 
 
 22
 I cannot concur in the opinion filed by my colleagues and respectfully dissent.
 
 
 23
 I cannot agree with the majority that Phelps v. United States, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) is controlling. The Phelps case does not necessarily supply the answer to the issue presented here. In Phelps, unlike this case, there was not the problem of the release and satisfaction of the underlying tax lien and its effect, if any, upon the tax levy. Phelps tells us that a properly-executed levy creates a custodial relationship which effects a seizure of the taxpayer's property, but Phelps does not consider the continued vitality of that relationship when the underlying tax lien has been released by a properly-filed notice.
 
 
 24
 Independent and exhaustive research reveals no express method, statutory or otherwise, for releasing a levy. In dealing with tax liens, there is no statute comparable to 26 U.S.C. § 6325 which describes in detail the manner and method whereby a tax lien may be released. 26 U.S.C. § 6343 only discloses that the Secretary is authorized to release a tax levy when "such action will facilitate the collection of the liability." The statute is silent as to the proper method for accomplishing such a release.
 
 
 25
 Surely, it may be asserted with reason and rationality, that Congress did not intend to leave property rights in a state of limbo and perpetual uncertainty when levies are made and no action is taken by the Government to actively enforce the levy, as in this case. Congress, in enacting the Federal Tax Lien Act of 1966, Pub.L. 89-719, 1966 U.S.Code Cong. and Admin.News, p. 3722, clearly expressed a concern for fairness and its effect was to resolve the perplexing problems of priorities, albeit, as pointed out heretofore, there is a "gap and lap" in this precise area.
 
 
 26
 From all of this, one could probably formulate a persuasive argument that, given good faith reliance upon the filing and contents of a release of an underlying tax lien and an acknowledgment therein of the satisfaction of the tax liability, the constructive transfer of title and/or possession of the subject of the levy was extinguished or "quitclaimed" by the properly-filed release and satisfaction. To this could be added a judicial pronouncement that there is nothing "unfair" about requiring the Government tax collectors to be bound by their solemn (though mistaken) act of filing a release of the lien and an acknowledgment of the satisfaction of the tax liability, especially where it is developed on the record that there has been good faith reliance on that filing.
 
 
 27
 If this record was sufficient to show actual knowledge and good faith reliance, the temptation to so "construe" the Federal Tax Lien Act of 1966 so as to produce such a result (as did the district court) would be difficult to resist. This would be true in spite of Federal Crop Insurance v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), in view of the many decisions of Courts of Appeals in the past 30 years hedging the vitality of that decision. See, United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir. 1970); United States v. Lazy FC Ranch, 481 F.2d 985 (9th Cir. 1973); and United States v. Wharton, 514 F.2d 406 (9th Cir. 1975).
 
 
 28
 I am not willing to confront this temptation without a further factual development at the district court level and without the aid of counsel on the law that might apply after further factual inquiry. I would reverse and remand for the purpose of taking additional evidence, if there is any, in fact, touching upon actual and good faith reliance upon the filing and the contents of the release and satisfaction of the underlying tax liens.