**PEOPLES NATIONAL BANK OF WASHINGTON, a national banking association, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C83–680R.**

United States District Court, W.D. Washington, at Seattle.

Bernard H. Friedman, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S., Seattle, Wash., for plaintiffs.

Gene S. Anderson, U.S. Atty., Seattle, Wash., for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on plaintiff's motion for reconsideration of the court's order of June 13, 1984, dismissing plaintiff's action for wrongful levy under 26 U.S.C. § 7426 (1982). The court has carefully considered the memoranda and other materials submitted in support of and in opposition to the motion. The court declines to order oral argument, which the court feels would not be helpful.

Plaintiff is People's National Bank of Washington (Peoples). Defendant is the United States. This case involves a federal tax levy on a taxpayer's bank account, in which Peoples claims a right of setoff and a security interest. The facts are undisputed.

On March 5, 1980 and April 6, 1981, the Internal Revenue Service (IRS) assessed income taxes against Jerry L. and Susan M. Redwine (the Redwines). The Redwines failed to pay the full assessment upon notice and demand.

On March 7, 1983, the Redwines borrowed money from Peoples to finance their farming activities. Exhibit A to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment. The Redwines executed a promissory note for $193,989.29 that was due "[o]n demand, or if no demand on 12–30–83." *Id.* The noted and accompanying Farm Security Agreement granted Peoples a security interest in, among other things, funds on deposit with Peoples and general intangibles. Exhibits A & B to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment.

On March 25, 1983, the IRS issued a Notice of Levy for $5,125.36 on Peoples to satisfy the delinquent tax assessment from the Redwines' deposit account. Exhibit C to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment. As of the time the Notice of Levy issued, Peoples had not taken any positive action to setoff the funds in the account or otherwise restrict the Redwine's ability to withdraw the funds. Approximately four months later, in July of 1983, the IRS filed notices of the tax lien pursuant to 26 U.S.C. § 6323(f) (1982). Exhibit A to Affidavit of Bernard H. Friedman in Support of Plaintiff's Motion for Summary Judgment. Peoples responded by delivering a cashier's check for $5,125.36 to the Clerk of this Court and commencing this action for wrongful levy under 26 U.S.C. § 7426 (1982).

On June 13, 1984, this court dismissed Peoples' action on the grounds that a federal tax lien had attached to the Redwines' property interest in the deposit account in question, and Peoples possessed no prior security interest in this account.

Now Peoples has moved for reconsideration of the Order of Dismissal. Peoples presents two arguments. First, Peoples argues that the Redwines' property interest in the deposit account is "limited by" Peoples' right of setoff and that the government can claim no interest greater

than that which could be claimed by the Redwines themselves. Second, Peoples argues that it has a common-law security interest in the deposit account and that this security interest takes priority over the tax lien.

In light of these arguments, the court believes that greater explanation of its position is warranted.

## I. THE REDWINES' INTEREST IN THE DEPOSIT ACCOUNT WAS PROPERTY TO WHICH A FEDERAL TAX LIEN COULD ATTACH

### A. *The IRS Has Authority to Levy on the Redwines' Property.*

■ When a taxpayer fails to pay an income tax on demand, a lien is created on "all property and rights to property" belonging to the taxpayer. 26 U.S.C. § 6321 (1982). This includes after-acquired property. *Bank of America Nat'l Trust & Savings Ass'n v. Mamakos*, 509 F.2d 1217 (9th Cir.1975). For the purpose of determining priority among liens, a federal tax lien arises on the date of the assessment of taxes. 26 U.S.C. § 6322 (1982). In this case, a tax lien on all the Redwines' property and rights to property arose when, in 1980 and 1981, the IRS assessed taxes against the Redwines. Unless provided otherwise by statute, this tax lien takes priority over any lien arising after the date of assessment. *See United States v. City of New Britain*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954); *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 87–89, 83 S.Ct. 1651, 1654–1656, 10 L.Ed.2d 770 (1963).

■ To recover delinquent tax assessments, the IRS may levy upon "all property and rights to property" that belong to the taxpayer or are subject to a federal tax lien. 26 U.S.C. § 6331(a) (1982). On March 25, 1983, the IRS levied on the Redwines' deposit account. The threshold question with respect to the lawfulness of this levy is whether the Redwines' interest in their account is property or rights to property. If the answer to this question is affirmative, then the levy is lawful. *See* 26 U.S.C. §§ 6331, 6332 (1982). The levy operates as a seizure of property. *American Acceptance Corp. v. Glendora Better Builders, Inc.*, 550 F.2d 1220, 1222–23 (9th Cir.1977). The only way to overcome such a levy is to establish an interest prior to that of the government. *See United States v. Citizens & Southern Nat'l Bank*, 538 F.2d 1101, 1105–7 (5th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977).

### B. *The Redwines' Interest in the Account Was Property.*

State law determines the nature of the legal interests the IRS seeks to reach by levy. *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81, 4 L.Ed.2d 1365 (1960); *United States v. Stonehill*, 702 F.2d 1288, 1298 (9th Cir. 1983). In other words, 26 U.S.C. § 6321 (1982) creates no property rights but merely attaches consequences to the existence of property rights under state law. 363 U.S. at 513, 80 S.Ct. at 1280.

■ Under Washington law, "[o]nce money is deposited in a general bank account, title to the money passes to the bank, and the bank and the depositor assume the relationship of debtor and creditor, respectively." *Peters v. Sjoholm*, 95 Wash.2d 871, 875, 631 P.2d 937, 940 (1981), *cert. denied*, 455 U.S. 914, 102 S.Ct. 1267, 71 L.Ed. 2d 455 (1982). While the bank has title to the account, the depositor "does have an ownership interest in the indebtedness created by the deposit...." *Id.* Such a state-recognized interest has been treated as "property" to which a tax lien may attach. *Bank of America Nat'l Trust & Savings Ass'n v. Mamakos*, 509 F.2d 1217 (9th Cir. 1975); *MacKenzie v. United States*, 109 F.2d 540, 542 (9th Cir.1940).

Peoples had the right to setoff the Redwines' account against payments due on the Redwines' promissory note. *See Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank of Washington,* 10 Wash.App. 530, 537, 518 P.2d 734, 739, *cert. denied,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). As the court explained in its Order of Dismissal, however, a bank's unexercised right of setoff does not extinguish the depositor's interest in a deposit account. Such extinguishment requires positive action by the bank.

■ Washington case law indicates that setoff is an optional remedy. *Bank of California v. Starrett,* 110 Wash. 231, 236, 188 P. 410, 412 (1920); *Allied Sheet Metal,* 10 Wash.App. at 537–38, 518 P.2d at 739 (holding that a bank may choose among multiple remedies). By implication, therefore, setoff does not occur automatically or by operation of law whenever a person becomes both a depositor and a delinquent debtor with respect to a single bank. If a bank declines to exercise its right of setoff, then the depositor's interest in his account remains undiminished. In this case, Peoples did not exercise its right of setoff before the IRS issued the Notice of Levy. Therefore, the Redwines still owned an interest in the account at the time of the levy.

■ Where a deposit account is currently vulnerable to a bank's right of setoff under state law, but the bank has chosen not to exercise this right, the depositor's interest in the account is still "property" or "rights to property" for the purposes of 26 U.S.C. §§ 6321 and 6331. *United States v. Citizens & Southern Nat'l Bank,* 538 F.2d 1101, 1105–7 (5th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); *United States v. Sterling Nat'l Bank & Trust Co.,* 494 F.2d 919, 921–22 (2d Cir.1974). Therefore, the Redwines' interest in the account at issue in this case was "property" or "rights to property" and subject to levy by the IRS.

## II. PEOPLES' RIGHT OF SETOFF DOES NOT DEFEAT THE TAX LEVY

### A. *Peoples' Right of Setoff was not "Choate" When the Tax Lien Arose*

■ In order to attain priority over a federal tax lien a state-created lien must become "choate" before the tax lien arises. *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). Under 26 U.S.C. § 6322 (1982), a federal tax lien arises on the date of assessment of taxes. In the present case, therefore, Peoples' interest in the levied property would have to have been "choate" on March 5, 1980, and April 6, 1981, in order to attain priority over the entire tax lien.

■ The "choateness" doctrine is part of a judicial gloss on 26 U.S.C. § 6321 (1982) (Section 6321), which creates federal tax liens on the property of delinquent taxpayers. *New Britain,* 347 U.S. at 85–86, 74 S.Ct. at 370–371 (discussing former codification of Section 6321, Section 3670 of the Internal Revenue Code of 1939). As a general rule, a lien created by Section 6321 takes priority over all liens arising subsequently. *Id.* The "choateness" doctrine serves to determine when a state-created lien may be considered to have arisen for the purpose of this rule. *Id.* In order for a lien to be "choate" in the federal sense, "the identity of the lienor, the property subject to the lien, and the amount of the lien" must be established. *Id.* at 84, 74 S.Ct. at 369. The cases have required that the amount of the lien be fixed exactly, beyond possibility of change. *See, e.g., United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

In *Bank of Nevada v. United States,* 251 F.2d 820, 826 (9th Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958), the Ninth Circuit held that a bank's right of setoff against a debt, which has arisen after assessment of taxes against

the debtor, was, at the relevant point in time, *"inchoate* in the extreme!" Like the present case, *Bank of Nevada* involved a tax levy on a delinquent taxpayer's bank account. After a tax lien had attached to all the taxpayer's property, the taxpayer borrowed money from the bank with which he maintained the account. When notified of the levy on the taxpayer's account, the bank attempted to exercise its right of set-off. The Ninth Circuit said that the bank's right of setoff did not have priority over the tax lien because the right of setoff had not been "choate" before the tax lien arose. In fact, the debt against which the bank attempted to exercise its right of setoff had not even existed at the time taxes were assessed against the taxpayer. Thus the bank's right of setoff could hardly have been more inchoate at the relevant point in time.

■■■ In the present case, Peoples had neither obtained nor exercised its right of setoff before the tax lien arose. Although Peoples did obtain the right of setoff before the IRS levied, the date of the levy is insignificant under the "choateness" doctrine. The only question is whether Peoples' interest in the Redwines' property was "choate" on March 5, 1980, and April 6, 1981, when the tax lien arose under 26 U.S.C. § 6322 (1982). Obviously, Peoples' interest was not "choate" on either of these dates because Peoples did not lend money to the Redwines until March 7, 1983. As in *Bank of Nevada,* therefore, the tax lien prevails.

Peoples suggests that the "choateness" doctrine has been undermined or eliminated by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125 (1966 Act). Prior to the enactment of the 1966 Act, the "choateness" doctrine had become controversial because very few state-created liens could meet the doctrine's strict requirements. *See* Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government against the In-*

*choate Lien,* 50 Iowa L.Rev. 724 (1965); Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,* 81 Harv.L.Rev. 1369, 1375–80 (1968); Plumb, *Federal Liens and Priorities— Agenda for the Next Decade,* 77 Yale L.J. 228, 230 (1967). However, the 1966 Act did not eliminate the doctrine. The 1966 Act was merely one in a series of enactments designating specific types of state-created liens for special protection. *See United States v. First Nat'l Bank of Memphis,* 458 F.2d 560, 564–68 (6th Cir.), *cert. denied,* 409 U.S. 851 (1972) (Appendix entitled "History of the Federal Tax Lien"). In enacting the 1966 Act, Congress clearly retained the general rule that a federal tax lien under Section 6321 takes priority over subsequently created interests. S.Rep. No. 1708, 89th Cong., 2d Sess. 3, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3724. The "choateness" doctrine, which merely elaborates this basic rule, was also preserved, except where overridden by a provision granting special protection to a particular class of state-created liens.

Since enactment of the 1966 Act, the Ninth Circuit has confirmed the continued vitality of the "choateness" doctrine. *See In re Priest,* 712 F.2d 1326 (9th Cir.1983), *modified,* 725 F.2d 477 (1984). In particular, the Ninth Circuit has continued to rely on *Bank of Nevada. See United States v. First Nat'l Bank of Arizona,* 458 F.2d 513 (9th Cir.1972), aff'g 348 F.Supp. 388 (D.Az. 1970). Therefore, "choateness" is the standard by which Peoples' right of setoff must be judged. As the right of setoff clearly was not "choate" when the tax lien arose, the right of setoff must yield to the tax lien.

B. *Peoples' Right of Setoff Does Not Diminish the Property on which the IRS May Levy.*

Peoples argues that the Redwines' interest in the account in question was "limited

678

by" Peoples' right of setoff and that the government can claim no interest greater than that which could be claimed by the Redwines themselves. More specifically, Peoples asserts that, if the Redwines had attempted to withdraw funds from their account before a setoff was executed, Peoples could have refused payment and exercised its right of setoff at that time. Peoples further asserts that the government, when it levies on a taxpayer's property, stands in the same shoes as the taxpayer. From these premises, Peoples deduces that the manuver that could have thwarted the Redwines is likewise effective against the IRS. Peoples thus concludes that its right of setoff can defeat a tax levy even though the right of setoff is as yet unexercised when a notice of levy is issued. According to Peoples, the right of setoff can be exercised successfully even *after* receipt of a notice of levy.

The Ninth Circuit has ruled at least three times that an unexercised right of setoff does not defeat a tax levy. *Bank of Nevada v. United States,* 251 F.2d 820 (9th Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); *Bank of America Nat'l Trust & Savings Ass'n v. United States,* 345 F.2d 624 (9th Cir.), *cert. denied,* 382 U.S. 927, 86 S.Ct. 316, 15 L.Ed.2d 340 (1965); *United States v. First Nat'l Bank of Arizona,* 458 F.2d 513 (9th Cir.1972), *aff'g* 348 F.Supp. 388 (D.Az. 1970). *See also United States v. Sterling Nat'l Bank & Trust Co.,* 494 F.2d 919 (2d Cir.1974); *United States v. Trans-World Bank,* 382 F.Supp. 1100 (C.D.Cal.1974). At least as long as a delinquent taxpayer has not been dispossessed of his property interest in a deposit account, the IRS may levy. *Id.*

In *Bank of America,* 345 F.2d 624, a tax lien on a certain taxpayer's property had arisen well before the taxpayer became indebted to the plaintiff bank. After the taxpayer's debt to the bank had matured but before the bank had exercised its right of setoff, the IRS levied on the taxpayer's

bank account. Upon receiving the notice of levy, the bank attempted to exercise its right of setoff. As in the present case, the bank's right of setoff could have been exercised before the levy but was not exercised until afterward. The Ninth Circuit held that the tax levy prevails.

As the facts of *Bank of America* are substantially indistinguishable from those of the present case, *Bank of America* is controlling. The levy on the Redwines' account cannot be thwarted by a right of setoff that was not yet exercised at the time of the levy.

It is of no consequence that the Redwines' property is "limited by" its vulnerability to setoff. For many months before Peoples loaned money to the Redwines, the Redwines' property, including after-acquired property, had all been vulnerable to levy by the IRS. This too was a "limitation." Such terminology, however, adds nothing. Peoples and the IRS are essentially competing creditors. The conflict between them is governed by a rule of priority. Under this rule, as explained in Section II–A of this Order, the IRS prevails. The court need not resort to recondite theories about "limited" rights to property.

## III. PEOPLES DOES NOT HAVE A SECURITY INTEREST PRIOR TO THE TAX LIEN

A federal tax lien under Section 6321 generally takes priority over state-created liens arising subsequently. *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). However, 26 U.S.C. § 6323(a) (1982) (Section 6323(a)) provides:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary of his delegate.

In the present case, the IRS did not file a notice of lien until July of 1983, months after the levy. Exhibit A to Affidavit of Bernard H. Friedman in Support of Plaintiff's Motion for Summary Judgment. Peoples asserts that, before such notice was filed,[1] Peoples had acquired a security interest in the Redwines' deposit account. Hence Peoples claims the protection of Section 6323(a).

The question is whether Peoples has acquired a "security interest" for the purpose of Section 6323(a). If so, the tax lien is not valid against Peoples.

The term "Security Interest" is defined in 26 U.S.C. § 6323(h)(1) (1982) (Section 6323(h)(1)). The definition requires in part that the alleged security interest have "become protected under local law against a subsequent judgment lien arising out of an unsecured obligation...." *Id.* In order to satisfy this requirement, Peoples interest must either be perfected under Washington's version of the Uniform Commercial Code (UCC) or otherwise protected under Washington common law.

### A. *Peoples Does Not Have a Perfected Security Interest Under the UCC.*

Originally, Peoples claimed to have a perfected security interest under Article 9 of the UCC. Since the Redwines' interest in their bank account was technically a chose in action, Peoples argued that it had acquired its security interest under the "General Intangibles" heading of the standard form Farm Security Agreement. Peoples perfected its rights under this agreement by filing the requisite financing statement on February 10, 1983, months before the IRS filed a notice of lien. Exhibit D to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment.

■ As the court explained in its Order of Dismissal, Peoples has not acquired a UCC security interest because Article 9 does not apply to the transfer of any interest in a deposit account. Under the UCC, " 'general intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." RCW § 62A.9–106. The Official Comments to Section 9–106 make clear that "this catch-all definition does not apply to types of intangibles which are specifically excluded from the coverage of the Article (Section 9–104)...." One type of property specifically excluded from the coverage of Article 9 is "an interest in any deposit account." RCW § 62A.9–104(1). *See also,* RCW § 62A.9–105(e) (defining "deposit account" as a "demand, time, savings, passbook or like account maintained with a bank"). Clearly, therefore, Peoples claim of a security interest under the UCC must be rejected.

### B. *Peoples Does Not Have a Perfected Security Interest at Common Law*

Peoples maintains that Section 6323(a) protects not only UCC security interests, but common-law security interests as well. Peoples maintains further that, by virtue of the note and security agreement, the Redwines assigned their chose in action to Peoples, thereby granting Peoples a security interest at common law. According to Peoples, this security interest was effective immediately and does not need to be filed. *See Bellingham Bay Boom Co. v. Brisbois,* 14 Wash. 173, 44 P. 153 (1896).

Because transfers of interests in deposit accounts are excluded from the coverage of Article 9, the common law applies.

---

1. Because the IRS filed notice of lien after it had already levied, it may be necessary to ask whether any security interest on the part of Peoples was acquired before the levy, not merely before the filing. A tax levy operates as a seizure of property. *American Acceptance Corp. v. Glendora Better Builders, Inc.,* 550 F.2d 1220, 1222–23 (9th Cir.1977). Peoples could not acquire a security interest in property already levied. *See Id.* However, the issue is not significant under the circumstances. Peoples' security interest, if it acquired one, predates the levy as well as the notice of lien.

These exclusions [under former UCC § 9–104(K), excluding transfers of tort claims and deposit accounts] ... reflect the thought that such transfers are beyond the pale with respect to a statute devoted to commercial financing. The pre-Code common law of assignment or pledge will continue to apply to the excluded transfers....

G. Gilmore, *Security Interests in Personal Property* § 10.8, at 316. *See also* UCC § 9–104 Official Comment No. 7 (such transactions covered by "existing law"). The existence of a security interest in this case is therefore governed by common law.

Any security interest, whether recognized under the UCC or at common law, is protected by Section 6323(a) as long as it meets the requirements of Section 6323(h)(1). When the Internal Revenue Code of 1954 was enacted, Section 6323(a) explicitly protected a "mortgagee" or "pledgee." Ch. 736, 68A Stat. 779. The Federal Tax Lien Act of 1966 replaced these terms with the language "holder of a security interest." Pub.L. No. 89–719, 80 Stat. 1125. The new language was intended to broaden the coverage of Section 6323(a) to include security interests under the UCC. S.Rep. No. 1708, 89th Cong., 2d Sess. 13, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3734. Coverage of common-law security interests was not eliminated. *Id.* In particular, a common-law assignment may still qualify as a "security interest" under Section 6323(a). *Trust Co. of Columbus v. United States,* 735 F.2d 447 (11th Cir.1984).

The question is whether there was an effective assignment to Peoples in this case. Peoples argues that the note and security agreement executed by the Redwines constitute an assignment. The note provides as follows:

> The holder of this note shall at all times have a security interest in deposit balances of any maker, endorser, surety or guarantor and may offset or apply such balances to the indebtedness evidenced

by this note at maturity, or upon default, without notice.

Exhibit A to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment. In addition, the security agreement, under the heading "Possessory Collateral," provides that Peoples has a "security interest" in, among other things, any "deposits." Exhibit B to Affidavit of Versil Brixey in Support of Plaintiff's Motion for Summary Judgment. Peoples has never disputed, however, that until the IRS levied on the Redwines' account, the Redwines had access to the funds in the account, subject only to the potential exercise of Peoples right of setoff.

One of the central elements of a common-law assignment is the transfer of control of the property assigned. 6A C.J.S. Assignments § 43. Discussing the requisites of a valid assignment, the Washington Supreme Court has said that "particular words are not important as long as the intent is manifest to deprive the assignor of control." *Amende v. Town of Morton,* 40 Wash.2d 104, 106, 241 P.2d 445, 446 (1952). In the case of an equitable assignment, it must be clear that "the assignor unequivocally relinquishes control or power of revocation over the debt, fund, or subject matter of the assignment to the use or benefit of the assignee." *Wise Plumbing & Heating, Inc. v. Alpine Development Co., Inc.,* 72 Wash.2d 172, 178, 432 P.2d 547, 551 (1967).

The court is convinced that the note and security agreement do not constitute an assignment. First, the Redwines retained substantial control over the funds in the account. Their access to the account was never restricted except for the possibility that Peoples might exercise its right of setoff. Thus an essential element of a common-law assignment is lacking. *Cf. United States v. Third Nat'l Bank of Nashville,* 589 F.Supp. 155, 158 n. 3 (M.D. Tenn.1984) (dicta). Second, the court is not persuaded that the parties intended their

transaction to constitute an assignment. The note and security agreement provisions creating a "security interest" in the Redwines' account do not purport to assign the Redwines' property. Nothing in these provisions suggests transfer of title or control. Instead, these provisions merely describe Peoples right of setoff. Peoples has even confirmed this interpretation. Plaintiff's Reply Memorandum Supporting Summary Judgment at 4. As explained in Part II of this Order, the unexercised right of setoff is insufficient to defeat a tax lien.[2]

In support of its assertion of a common-law security interest, Peoples cites *Trust Co. of Columbus v. United States*, 735 F.2d 447 (11th Cir.1984), in which an assignment of a depositor's interest in a bank account took priority over a subsequently filed tax lien. The *Trust Co. of Columbus* case is plainly distinguishable because in that case there was a valid assignment under local law, while in this case there is none. The assignment in that case was executed under Georgia law. The Eleventh Circuit did not explain the elements of an assignment under Georgia law or how these elements were reflected in the transaction at issue. This court has no reason to believe, however, that the transaction in *Trust Co. of Columbus* failed to satisfy a major element of an assignment under Georgia law. In contrast, the transaction between Peoples and the Redwines failed to transfer control of the assigned property

as required by Washington law. Also, the promissory note in *Trust Co. of Columbus* provided that the collateral was "delivered, pledged, assigned, conveyed and transferred" to the Trust Company. 735 F.2d at 448. This language clearly indicates an intent to create a common-law assignment. In contrast, the documents on which Peoples relies in this case do not purport to assign or otherwise transfer the Redwines' bank account.

▮▮▮▮▮ Peoples has not asserted that the Redwines pledged their chose in action, but the court addresses this possibility for the sake of completeness. Pledge is the alternative common-law method by which one could transfer a security interest in a chose in action. To execute a pledge, the pledgor must surrender possession of the pledged property. *Kietz v. Gold Point Mines, Inc.*, 5 Wash.2d 224, 229–30, 105 P.2d 71, 74 (1940). The key is relinquishment of control by the pledgor, as opposed to acquisition of control by the pledgee. 5 Wash.2d at 230, 105 P.2d at 74 (delivery to third party permissible). For reasons similar to those stated with respect to assignment, therefore, the note and security agreement do not constitute a pledge.

## IV. CONCLUSION

The Redwines' interest in their bank account was property subject to levy by the

2. The unexercised right of setoff is not itself a prior security interest under Section 6323(a) because it never became "choate." *See United States v. Sterling Nat'l Bank & Trust Co.*, 360 F.Supp. 917, 924 (S.D.N.Y.1973), *aff'd in part & rev'd in part on other grounds*, 494 F.2d 919 (2d Cir.1974). One might argue that the "choateness" doctrine has been supplanted by Section 6323(h)(1), which defines "security interest" for the purpose of Section 6323(a). However, the "choateness" doctrine remains relevant under Section 6323(a), at least as a tool to resolve issues not clearly anticipated by Congress. *See Bank of California, Nat'l Ass'n v. United States*, 520 F.2d 302 (9th Cir.1975) ("choateness doctrine governs when judgment lien under Section 6323(a) considered to attach); *J.D. Court, Inc. v. United States*, 712 F.2d 258, 262–63 (7th Cir. 1983) (applying "choateness" doctrine to securi-

ty interest under Section 6323(a)); *Rice Inv. Co. v. United States*, 625 F.2d 565, 571 n. 19 (5th Cir.1980) (citing *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040 (5th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973) as example of "choateness" doctrine used to interpret Section 6323). Application of the "choateness" doctrine is therefore appropriate where a bank's right of setoff is proffered as a security interest under Section 6323(a). As a technical matter, Peoples' right of setoff does not receive the protection of Section 6323(a) because it was not "choate" before notice of lien was filed. For practical purposes, the right of setoff is unprotected because it was not "choate" before the levy. It could not become "choate" after the levy. *See American Acceptance Corp. v. Glendora Better Builders, Inc.*, 550 F.2d 1220, 1222–23 (9th Cir.1977).

IRS. Therefore, the levy was lawful. Peoples' unexercised right of setoff did not diminish the Redwines' property interest in the account or otherwise thwart the tax levy. Peoples has no prior security interest in the property and cannot claim the protection of Section 6323(a). Accordingly, the federal tax lien prevails. The court, having had the benefit of extensive briefing on these issues, is of the opinion that oral argument would not be helpful.

IT IS NOW, THEREFORE, ORDERED that plaintiff's motion for reconsideration is DENIED.