Raymond C. BABB and Robin R. Babb, Plaintiffs,

v.

Craig FRANK and Maynard Lindvig, as power of attorney for Clifford L. Lindvig, Defendants.

No. 96–C–0778–C.

United States District Court, W.D. Wisconsin.

Dec. 2, 1996.

Ronald S. Stadler, Stadler & Schott, S.C., Brookfield, WI, for Raymond C. Babb, Robin R. Babb.

Susan V. Kelley, Madison, WI, for Craig Frank.

Maynard Lindvig, Viroqua, WI, for Maynard Lindvig.

## OPINION AND ORDER

CRABB, District Judge.

This is an action to quiet title that arises out of a tax sale of real property conducted by the Internal Revenue Service pursuant to 26 U.S.C. § 6335. Both sides have moved for summary judgment on the sole issue raised in the case: whether a delinquent taxpayer whose real property is seized and sold by the IRS can convey title in his property and assign his right of redemption before the running of the 180–day period for redemption. I conclude that he can and will grant judgment for defendants.

From the findings of fact proposed by the parties, I find that the following material facts are not in dispute. (In determining the undisputed facts, I have ignored the paragraphs in the affidavits of defendant Frank and Pamela Kern that are the subject of a motion to strike by plaintiffs. The averments are largely hearsay, as plaintiffs contend, and they are immaterial as well.)

## UNDISPUTED FACTS

All of the parties are adult residents of the state of Wisconsin. Plaintiffs live in Crawford County; defendants Craig Frank and Maynard Lindvig live in Vernon County. Defendant Lindvig has power of attorney for his brother, Clifford Lindvig, who was the owner of a parcel of land in Vernon County that was seized by the Internal Revenue Service in January 1996, for nonpayment of taxes.

Pursuant to 26 U.S.C. § 6335, the IRS sold Clifford Lindvig's property by sealed bid at a public sale held on February 15, 1996. Plaintiffs and defendant Craig Frank bid on the property. Revenue Officer Neil Duresky certified plaintiffs' bid as highest and issued plaintiffs a certificate of sale on February 20, 1996, which plaintiffs recorded with the Vernon County Register of Deeds the same day.

On August 8, 1996, Clifford Lindvig executed a power of attorney in the name of his brother Maynard. Acting pursuant to that power, defendant Maynard Lindvig executed a quitclaim deed to the property on August 13, 1996, conveying Clifford Lindvig's interest to Craig Frank, and at the same time, signed a document entitled "Assignment of Right of Redemption," granting Craig Frank a right to redeem the property. The power of attorney, quitclaim deed and assignment of right to redeem were filed with the Vernon County Register of Deeds on August 20, 1996. On August 13, 1996, Craig Frank tendered to the IRS a cashier's check for $210,-767.50, payable to plaintiffs, a sum equal to the amount paid by plaintiffs plus interest at the rate of 20% a year to August 13, 1996.

By letter dated August 16, 1996, plaintiffs requested a deed to the property. The Secretary of the Department of Treasury has declined to provide one and has refused to cause entry of the redemption to be made upon the record pending resolution of the parties' dispute.

## OPINION

### A. Statutory Interpretation of 26 U.S.C. § 6337

The applicable statute, 26 U.S.C. § 6337, makes the following provisions for redemption of real estate after sale:

(b) Redemption of real estate after sale.—

(1) Period.—The owners of any real property sold as provided in section 6335, their heirs, executors, or administrators, or any person having any interest therein, or a lien thereon, or any person in their behalf, shall be permitted to redeem the property sold, or any particular tract of such property, at any time within 180 days after the sale thereof.

Any interpretation of a law or regulation starts with the plain meaning. *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990); *Illinois E.P.A. v. United States E.P.A.*, 947 F.2d 283, 289 (7th Cir.1991). In many instances, that is also the end of the inquiry. In this case, however, the meaning of the statute is not plain as it relates to the question the parties pose. It is not possible to tell from merely reading the statute whether Congress intended it to apply only to persons who have an interest in the property at the time of sale (or earlier, at the time the notice of levy is posted) or whether it would apply, as defendants urge, to persons who acquire interests in the property after sale but before the period of redemption has run. Although plaintiffs assert in their brief that "Congress chose not to allow such assignments," they cite nothing in the statutory language or in any legislative history to support their assertion. Given this uncertainty about the plain meaning of the statute, it is helpful to turn to the relevant canons of statutory construction.

An owner's right to redeem property seized by the United States for failure to pay taxes was well-established long before the passage of 26 U.S.C. § 6337. *See Corbett v. Nutt*, 77 U.S. (10 Wall.) 464, 19 L.Ed. 976 (1870); *Bennett v. Hunter*, 76 U.S. (9 Wall.) 326, 19 L.Ed. 672 (1869). Leniency to the owner in the exercise of this right has always been the rule of thumb. *See Corbett*, 77 U.S. at 474–75 ("It is the general rule of courts to give to statutes authorizing redemption from tax·sales a construction favorable to owners …"); *Anselmo v. James*, 449 F.Supp. 922, 925 (D.Mass.1978) (same); *United States v. Lowe*, 268 F.Supp. 190, 192 (N.D.Ga.1966), *aff'd Lowe v. Monk*, 379 F.2d 555 (5th Cir. 1967) (same). Courts give the benefit of the doubt to owners with respect to redemption rights because of the harsh consequences of losing one's property to the government.

To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an un-

restrained tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded.

*McCampbell v. DiNuzzo,* 50 Misc.2d 437, 270 N.Y.S.2d 685, 689–90 (Sup.Ct.1966) (citing 2 *Cooley on Taxation,* 3d Ed., pp. 1023–1024); *Krassner v. Veneman,* 206 Cal.App.2d 299, 23 Cal.Rptr. 673, 675 (Dist.Ct.App.1962) (citing *Cooley on Taxation* ).

Section 6337 extends the right to redeem to "heirs, executors, or administrators, or any person having an interest [in the property], or a lien thereon, or any person in ... behalf [of the owner]." 26 U.S.C. § 6337(b)(1); *see also Lowe,* 268 F.Supp. at 193 (tenant in common who held quit claim deed entitled to redeem); *Samet v. United States,* 242 F.Supp. 214 (M.D.N.C.1965) (spouse claiming inchoate right to dower in property owned by husband and subject to tax lien had sufficient interest to permit exercise of redemption rights). Congress's inclusion of such a broad array of individuals in the list of those with redemption rights is an indication that it views redemption rights in an expansive fashion. Nonetheless, the Supreme Court has characterized the right of redemption as "a statutory right exclusively ... Courts cannot ... make any exceptions not made in the statute." *Keely v. Sanders,* 99 U.S. 441, 445–46, 25 L.Ed. 327 (1878); *see also Krassner,* 23 Cal.Rptr. at 677 ("The rule that redemption statutes are to be liberally construed does not mean their provisions can be disregarded.").

Plaintiffs contend that the court would be making an exception in § 6337 if it allowed defendant Frank to exercise redemption rights on the property, when he did not gain an interest in the property until after the tax sale. But to make an exception, there must be a specified norm from which the exception departs. No such norm is apparent in a reading of § 6337. The statute does not rule out an exercise of redemption rights by individuals in defendant's position. *Keely,* 99 U.S. 441, instructs courts not to violate explicit statutory language in an attempt to reach what the court believes to be the proper equitable result, as would be the case if

courts extended the statutory time limits for redemption after they had expired. *Id.; see also Howard v. Adle,* 538 F.Supp. 504 (E.D.Mich.1982) (court lacks power to extend redemption period by even one day). *Keely's* warning not to violate explicit statutory provisions is of little relevance to this case, in which neither side's interpretation of § 6337 is mandated specifically by the statutory language. To the extent that any canon of construction controls the interpretation of § 6337, it can only be the one favoring the interests of the owner.

**B.** *Property Interest Held by Clifford Lindvig After Tax Sale*

■ Although the statutory language does not dictate a clear resolution to this case, defendant Frank's position would be nullified if the delinquent taxpayer, Clifford Lindvig, did not have a property interest to pass Frank at the time Maynard Lindvig issued the quitclaim deed and assignment of redemption rights. Accordingly, it is necessary to determine whether Clifford Lindvig retained any interest in the property after the tax sale that could be conveyed to defendant Frank.

■ When the government sells seized property in accordance with 26 U.S.C. § 6335, it provides the purchaser with a certificate of sale. 26 U.S.C. § 6338(a). In the case of real property, the tax sale purchaser can exchange the certificate of sale for a deed to the property after the statutory redemption period has expired. 26 U.S.C. § 6338(b). The tax sale purchaser does not receive the delinquent taxpayer's right, title and interest to the property until he obtains the deed. 26 U.S.C. § 6339(b)(2); *Taylor v. United States,* No. CIV 90–1929–PCT–SMM, 1993 WL 597379 at *3 (D.Ariz. Sept. 27, 1993). Possession of a certificate of sale does not pass title. *United States v. Cassel Brothers, Inc.,* No. 79–1285, 1981 WL 1944 at *3 (M.D.Pa. Oct. 27, 1981).

Plaintiffs disagree with this reading of § 6339(b), contending that title to property and a deed to that property are not always linked. Although plaintiffs concede that tax sale purchasers do not obtain a deed to the property until the redemption period has ex-

pired, they argue that title passes to such purchasers upon completion of the tax sale. Citing *S.R.A., Inc. v. Minnesota,* 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946), plaintiffs argue that the tax sale divests the delinquent taxpayer of all ownership rights and leaves him with redemption rights that are his purely "as a matter of grace." *Id.* at 567, 66 S.Ct. at 755.

Plaintiffs' interpretation of § 6339(b) is strained. Section 6339(b)(2) states explicitly that a deed operates as "a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto." If title to the property were conveyed to the tax sale purchasers at the time of the tax sale, Congress would have had no reason to enact § 6339(b), providing for the conveyance of title to these purchasers once the redemption period had expired. There is simply nothing in the statutory scheme to suggest that title passes before the deed does.

Plaintiff's citations to *S.R.A.,* 327 U.S. 558, 66 S.Ct. 749, *Van Brocklin v. Tennessee,* 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845 (1886) and *Bennett v. Hunter,* 76 U.S. (9 Wall.) 326, 19 L.Ed. 672 (1869) do not alter this determination. Those cases were decided under an earlier tax code that did not include a provision like § 6339(b), conveying right, title and interest to the property at a date six months after the tax sale. It is true that in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the United States Supreme Court cited *Bennett* for the proposition that "ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale." *Id.* at 211, 103 S.Ct. at 2317. Thus, *Bennett* may still apply in some contexts today. However, in *Whiting Pools,* the Court was discussing rules applicable to personal property, not to real property. Under 26 U.S.C. § 6339(a)(2), right, title and interest to personal property pass to the purchaser upon receipt of the certificate of sale. Nothing in the *Whiting Pools* decision indicates that the Supreme Court intended its application of *Bennett* to extend beyond the personal property context; the Court followed its citation to *Bennett* with a reference to § 6339(a)(2), a statute concerned specifically with personal property. In addition, the opinion makes clear that the government does not obtain title to a delinquent taxpayer's property upon the imposition of its levy or completion of the tax sale. An IRS lien or levy does not transfer ownership of the seized property to the IRS. *Id.* at 210–11, 103 S.Ct. at 2316–17. The Supreme Court took the opportunity to disavow dictum in *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), that might have suggested an opposite conclusion. *Id.* at 210 n. 18, 103 S.Ct. at 2316 n. 18. This explicit repudiation of *Phelps* renders suspect a key case on which plaintiffs rely, *American Acceptance Corp. v. Glendora Better Builders, Inc.,* 550 F.2d 1220 (9th Cir. 1977), a case in which the Court of Appeals for the Ninth Circuit considered itself bound by *Phelps. Id.* at 1222 ("*Phelps* ... controls in this case"). Relying on *Phelps,* the court of appeals held that once a levy is imposed "no subsequent party c[an] gain any rights in th[e] property ... [because] ... [a]ll rights [a]re held by the IRS." *Id.* at 1222–23; *see also United States v. Hemmen,* 51 F.3d 883, 887 (9th Cir.1995) (levy confers upon government right to all property levied upon and creates custodial relationship so that property comes into constructive possession of government); *but see Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 688 (5th Cir.1983) (questioning basis of *American Acceptance* ). Now that the Supreme Court has renounced its discussion of IRS ownership in *Phelps,* the precedential value of *American Acceptance* is questionable.

The Supreme Court's repudiation of *Phelps,* 421 U.S. 330, 95 S.Ct. 1728, casts doubt on another of plaintiff's citations, *Roig Commercial Bank v. Dueno,* 617 F.Supp. 913, 915 (D.P.R.1985), a case relying on *American Acceptance* for the proposition that a "seizure of a property by the I.R.S. operates as a transfer to it and precludes other parties from gaining any rights to the property." *Id.* at 915. Even if *American Acceptance* were still good law on this point, *Roig,* misstates the law in asserting that a tax sale certificate transfers title to the purchaser from the moment of sale. *Id.* at 915.

That is not what 26 U.S.C. § 6338 provides. No title or deed passes hands when the IRS imposes its tax lien or grants the tax sale purchaser a certificate of sale. In this case, Clifford Lindvig retained ownership of his property, subject, of course, to the lien of the IRS. When he exercised the quitclaim deed and assignment of redemption rights, those documents were not invalid per se. Lindvig retained an ownership interest to pass. Nonetheless, it is necessary to determine whether any other barriers stand in the way of Lindvig's transfer to Frank.

### C. *Relevant Precedent*

■ There is very little case law on point. *Spruill v. Cage*, 262 F.2d 355 (6th Cir.1958), raises the identical question, but the court was able to resolve the issue on jurisdictional grounds without reaching the issue. *McCampbell*, 270 N.Y.S.2d 685, has similar facts; again however, the court disposed of the case without deciding the issue. *Cassel Brothers*, 1981 WL 1944, comes close but does not address the issue directly. The delinquent taxpayer corporation, Cassel Brothers, Inc., attempted to assign its right of redemption to its president. The court determined, however, that any redemption rights exercised by the president were exercised on behalf of the corporation and thus avoided the question whether a delinquent taxpayer may assign its redemption rights. *But see id.* at *4 ("No mention is made of the right to assign the redemption right to another").

*Roig*, 617 F.Supp. 913, supports plaintiffs' position to the extent that it holds that § 6337 allows only those parties who had an interest in the property "before" the tax sale to redeem the property. *Id.* at 915. However, the court reached this conclusion after finding that "it betrays logic to interpret . . . 26 U.S.C. § 6337, as allowing the attachment subsequent to a tax sale of the purchaser's property which consequently strips the purchaser of its acquired rights to that property." *Id.* As explained previously, the court misinterpreted the extent of the tax sale purchaser's rights, leading it to view redemption by an individual with an interest acquired after a tax sale as stripping the tax sale purchaser of lawfully obtained title.

Section 6338 does not vest title in the tax sale purchaser until the period of redemption has expired; therefore redemption does not take title away from the tax sale purchaser. Instead it invalidates the tax sale purchaser's certificate of sale, a far less invasive intrusion into the tax sale purchaser's rights.

Tax sale purchasers buy property with full knowledge that the owner or one of a number of other individuals might redeem during the next six months. They are protected financially if redemption rights are exercised by the requirement that the redeeming party pay them 20% interest on their investment in the property. 26 U.S.C. § 6337(b)(2). Rather than defying logic, it seems perfectly sensible to allow a delinquent taxpayer to transfer ownership and redemption rights in his property after a tax sale. Such an arrangement benefits the owner, who is the most important entity in the process.

■ Allowing owners to transfer redemption rights after the tax sale permits them to recoup whatever remaining value there may be in their property. If they can negotiate with a prospective purchaser who is willing to pay the purchase price plus 20% interest and to pay the owner some additional amount, the owner stands to gain additional profit on property that is already being taken away from him by the government. Plaintiffs and defendants agree that a prospective purchaser such as defendant Frank takes the property subject to the tax lien of the IRS, which may operate to relieve the delinquent taxpayer of a significant burden if the tax lien exceeds the value of the property. Allowing the owner to transfer redemption rights comports with the canon that redemption rights are to be construed liberally in favor of the owner. *Central Life Assurance Society v. Spangler*, 204 Iowa 995, 216 N.W. 116 (1927) and *Lancaster County v. Schwarz*, 153 Neb. 472, 45 N.W.2d 432 (1950) reach this same conclusion, albeit construing redemption rights under state statutes rather than under § 6337. In *Spangler*, 216 N.W. 116, the court summed up the principle in the following terms.

> The practical effect of [a redemption] statute is that, when the distressed, and perhaps helpless, owner of real estate is

**410**

approaching the end of his period of redemption, he may barter to another the remnant of his rights, both contractual and statutory. In such case, the right of redemption carries the only value which the ownership has. Such value is potential, and can be realized only by the exercise of the right of redemption. The exercise of such right saves the ownership. If the owner is not able to exercise such right, then neither ownership nor right of redemption has any value.

*Id.* 216 N.W. at 117; *see also Town of Lynnfield v. Owners Unknown,* 397 Mass. 470, 492 N.E.2d 86 (1986) ("Redemption is no less favored where an individual or entity has acquired an ownership interest in the subject property subsequent to the initiation of foreclosure proceedings . . ."). *Id.* 492 N.E.2d at 88.

The government stands to benefit by allowing transfer before the expiration of the redemption period. If tax sale purchasers know that delinquent taxpayers will be able to assign their redemption rights, they are likely to make bids closer to fair market value at the tax sale so that other prospective purchasers do not have a financial incentive to pay the 20% interest plus some undefined amount to the owner in order to obtain redemption rights. The fact that defendant Frank was still willing to pay 20% interest after six months in order to obtain the property suggests that plaintiffs obtained the property at the tax sale for less than its true worth.

No benefit would accrue to owners if allowing them to convey their property had the effect of dissuading people to purchase land at tax sales, but it seems unlikely that this will occur. Tax sale purchasers know that certain individuals and entities have redemption rights. They make their bids with this in mind. They know the risk. It is one worth taking, because they receive 20% interest on their investment, a far better return than a savings account and competitive with the very best mutual fund rates.

Although plaintiffs suggest that a decision for defendants will inspire potential purchasers to wait in the wings until the highest tax sale bid is made and then try to purchase the property directly from the delinquent taxpayer, the suggestion is not compelling. There is too much risk in such a move: serious purchasers can never be certain they will be able to reach a purchase agreement with the owner or that other prospective purchasers will not offer more for the property.

ORDER

IT IS ORDERED that the motion for summary judgment of defendants Craig Frank and Maynard Lindvig as attorney for Clifford L. Lindvig is GRANTED. The motion for summary judgment of plaintiffs Raymond C. Babb and Robin R. Babb is DENIED. Plaintiffs' motion to strike paragraphs from the affidavits of defendant Frank and Pamela Kern is DENIED as moot.