**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHESAPEAKE OPERATING, INC.,

      Plaintiff-Appellee/
      Cross-Appellant,

v.

VALENCE OPERATING COMPANY,

      Defendant-Appellant/
      Cross-Appellee.

Nos. 98-6314
&
98-6327

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-74)

Submitted on the briefs:

James R. Waldo of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Oklahoma, for Defendant-Appellant/Cross-Appellee.

Charles C. Smith, Oklahoma City, Oklahoma, for Plaintiff-Appellee/Cross-Appellant.

Before **BALDOCK** , **BARRETT** , and **McKAY** , Circuit Judges.

**BALDOCK** , Circuit Judge.

Chesapeake Operating, Inc. filed a diversity action against Valence Operating Company to collect its proportionate share of the costs of drilling, completing, and operating an oil and gas well known as the "Fell 1-22" located in a 160-acre quarter section in Grady County, Oklahoma. A jury verdict found Valence liable to Chesapeake for well costs in the stipulated amount of $284,262.09 under a November 1995 agreement between the parties. Chesapeake filed a post-trial motion for prejudgment interest, which was granted by the district court, and for attorney fees, which was denied. Valence appeals the jury's verdict and the award of prejudgment interest; Chesapeake cross-appeals the district court's denial of attorney fees. We have jurisdiction over this diversity action under 28 U.S.C. §§ 1332(a), 1291 and we affirm in part and reverse and remand in part. [1]

## Background

Both Chesapeake and Valence own oil and gas leasehold working interests in the quarter section in which the Fell 1-22 well is located. Chesapeake's interest was limited to those formations encountered at a depth between approximately 11,500 feet and 13,000 feet below the earth's surface, in an area

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

referred to as the "Pre-Pennsylvanian zones." Valence's primary interests were in those formations encountered between the surface and approximately 11,500 feet below the surface, referred to as the "Pennsylvanian" zone, but it also owned interests in the Pre-Pennsylvanian zones. Pursuant to a 1993 agreement between the parties, Valence agreed to farm out most of its interest in the Pre-Pennsylvanian zones to Chesapeake and to participate with Chesapeake in the drilling of Fell 1-22. Chesapeake commenced drilling operations in 1994, but was forced to suspend operations after the well reached total depth because of problems with the well. The 1993 agreement between the parties expired.

In May 1995, Chesapeake re-entered the existing Fell 1-22 wellbore and commenced drilling a side track wellbore from the existing wellbore with the intent to produce from both the Pennsylvanian and Pre-Pennsylvanian zones. Because Chesapeake owned no interests in the Pennsylvanian zone and Valence wanted to produce from both the Pennsylvanian and Pre-Pennsylvanian zones, the parties entered a letter agreement in November 1995 regarding the Fell 1-22 well and their respective rights in the Pennsylvanian and Pre-Pennsylvanian zones.

Pursuant to the 1995 agreement, the subject of this litigation, Valence agreed to participate in the cost of drilling, completing and operating the Fell 1-22 side track well as of May 22, 1995, the date Chesapeake began the side track operation. The parties agreed to assign to each other sufficient leasehold interests

so that each would own an equal interest in the Pennsylvanian and Pre-Pennsylvanian zones in order to allow for commingling production from the two zones. According to testimony at trial, when production is commingled, ownership in the commingled zones must be equal because the zone from which a specific hydrocarbon is produced cannot be identified.

In the area where the Fell 1-22 well was located, however, other entities not subject to the 1995 agreement owned leasehold interests in the Pennsylvanian zone. Therefore, to enable commingled production, the 1995 agreement provided that Chesapeake and Valence would use their best interests to equalize ownership among all the working interests. The agreement contemplated that if commingling production was not possible, another means of production known as "dual completion" would be used. Under this method, equalized ownership is not necessary because the hydrocarbons from each zone are isolated all the way to the surface and are measured and produced separately. The agreement did not specify a date or time period within which either commingled production or dual completion production would be completed, but it did state that Chesapeake would "continuously prosecute completion of the well in a timely fashion." Appellant's App., Vol. I at 61.

Chesapeake completed the Fell 1-22 sidetrack in the Pre-Pennsylvanian zone by February 1996. Chesapeake attempted to purchase all of the non-party

working interests in the Pennsylvanian zone in order to allow commingling production. After several months of trying unsuccessfully to equalize ownership, Chesapeake notified Valence that it could not proceed with commingled production of the well because of the unequal ownership interests, but was willing to proceed with the dual completion production method. Valence refused to authorize dual completion, however, and refused to pay its share of the costs of drilling and completing the Fell 1-22 side track well.

Chesapeake, as operator of the well, brought this diversity action to recover Valence's proportionate share of the drilling costs, alleging Valence had breached the 1995 agreement. Valence responded that Chesapeake had failed to comply with the terms of the 1995 agreement by not continuously prosecuting completion of the well in a timely fashion, thereby absolving Valence of any obligation to pay for the drilling costs of the well. The district court entered partial summary judgment in favor of Chesapeake, finding that the 1995 agreement was a binding contract, but concluding that material issues of fact were in dispute with respect to whether Valence breached the contract and whether any obligations under the contract were excused. These issues were tried to a jury, which returned a verdict in favor of Chesapeake in the amount of $284,262.09, together with post-judgment interest.

Valence's Appeal

Valence first contends the jury's verdict against it is not supported by substantial evidence.  However, Valence failed to move for judgment as a matter of law at the end of all the evidence.  *See* Fed. R. Civ. P. 50(a).  By virtue of this failure, it has forfeited the opportunity to secure appellate review of the sufficiency of the evidence.  *See Richards v. City of Topeka*, 173 F.3d 1247, 1253 n.4 (10th Cir. 1999).  Furthermore, even had the error been properly preserved, we find the evidence sufficient to support the jury's findings.  We therefore decline to disturb the verdict of the jury.

Valence next contends the district court erred in awarding $17,095.24 in prejudgment interest.  "We review the district court's decision to award prejudgment interest for abuse of discretion."  *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1067 (10th Cir. 1998).  "A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest."  *See Strickland Tower Maintenance, Inc. v. AT & T Communications, Inc.*, 128 F.3d 1422, 1429 (10th Cir. 1997).  "The relevant Oklahoma statute permits the recovery of prejudgment interest on 'damages certain, or capable of being made certain by calculation.'"  *Id.* (quoting Okla. Stat. Ann. tit. 23, § 6 (West 1987)).

"It is well established that a damage award is not certain for purposes of the Oklahoma statute 'unless the amount of recovery is liquidated or capable of ascertainment by calculation or resort to well-established market values.'"  *Id.*

-6-

(quoting *Sandpiper North Apartments, Ltd. v. American Nat'l Bank & Trust Co.* , 680 P.2d 983, 993 (Okla. 1984)). "Therefore, if the fact-finder must weigh conflicting evidence in order to determine the precise amount of damages due to the plaintiff, then a court cannot grant prejudgment interest." *Id*. (citing *Withrow v. Red Eagle Oil Co.* , 755 P.2d 622, 625 (Okla. 1988) and *Liberty Nat'l Bank & Trust Co. v. Acme Tool Div.* , 540 F.2d 1375, 1383 (10th Cir. 1976)).

Here, the district court found that the amount Valence owed Chesapeake was capable of being made certain by calculation. The district court concluded that the amount of liability became certain, and thus that the right to prejudgment interest began to accrue, on December 31, 1996, the date that Chesapeake incurred the last charges for drilling and completion of the Fell 1-22 well and, thus, the total cost of the project became known. The parties did not dispute that the amount of Valence's liability to Chesapeake was $284,262.09, the total amount of all of Valence's invoices for the drilling and completion of the well as of December 31, 1996, less the revenues from Valence's share of production as of that same date.

Valence contends the amount owed could not be determined with certainty until the validity and effect of the November 1995 agreement was determined by the court. The enforceability and validity of the agreement is not, however, the relevant inquiry; "the correct inquiry is whether 'the amount sued for' can be

ascertained prior to judgment." *First Nat'l Bank & Trust Co. v. Iowa Beef Processors, Inc.*, 626 F.2d 764, 770 (10th Cir. 1980) (construing § 6). "Almost any lawsuit involves some dispute over defendant's liability." *Id.* We agree with the district court that the amount sued for was capable of being made certain by calculation. The claim did not require that any fact-finder weigh conflicting evidence in order to determine the amount of Valence's proportionate cost of the drilling and completion of the Fell 1-22 side track well. Indeed, the amount of liability was stipulated by the parties and the jury was instructed that the amount of damages was not an issue for its determination.

Valence also contends the amount owed was uncertain because it was not until September 1996 that Chesapeake took the position that Valence owned more than a one percent interest in the Fell 1-22 well. Chesapeake conceded at trial that it miscalculated Valence's interest in the well on the invoices it sent prior to August 1996, at which time it corrected the billing statements to reflect Valence's true ownership interest. This miscalculation does not make the amount owed by Valence uncertain because the parties never disputed the amount of Valence's ownership interest under the 1995 agreement. Valence did not argue its ownership interest was miscalculated after the August 1996 correction and the district court found that the amount owed by Valence did not become liquidated until several months later, on December 31, 1996.

Valence finally contends the amount owed was uncertain because it was only at the time of trial that appropriate offsets were calculated for the oil and gas revenues attributable to its interest. Again, the parties never disputed the amount of offsetting revenues; the offsets were merely an element of the calculation used to arrive at the liquidated damage amount. The loss was for a sum capable of being made certain by calculation or by reference to some fixed standards: the amount of total invoices less the undisputed offsetting revenues. The offsets were merely an element of the calculation used to arrive at the liquidated damage amount and the mere fact that there were offsetting revenues does not render the amount of remaining liability uncertain. *See First Nat'l Bank,* 626 F.2d at 770 (holding that liability was not uncertain under § 6    even though parties disputed whether the liability was subject to an offset).

Chesapeake's Cross-Appeal for Attorney Fees

Chesapeake appeals the district court's denial of its motion for an award of attorney fees under Okla. Stat. tit. 12, § 936. While we generally review a denial of attorney fees for an abuse of discretion, we review de novo any statutory interpretation or other legal analysis underlying the district court's decision concerning attorney fees. *See Octagon Resources, Inc. v. Bonnett Resources Corp. (In re Meridian Reserve, Inc.)*, 87 F.3d 406, 409 (10th Cir. 1996).

Section 936 provides that:

> In any civil action to recover . . . for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Valence did not dispute that Chesapeake was the prevailing party or that the fees requested were reasonable. In denying Chesapeake's motion for attorney fees, the district court concluded that Chesapeake's action to recover the costs of drilling and completing the well was not for "labor or services" as contemplated by § 936. In so concluding, the district court cited *Russell v. Flanagan*, 544 P.2d 510, 512 (Okla. 1975), which narrowly construed § 936 as limited to situations where "suit is brought for labor or services rendered." *Id.* at 512.

However, two months after the district court's order denying attorney fees, the Oklahoma Supreme Court held, in response to a certified question from this court, that an action to recover monies expended to third parties for the drilling

costs of an oil and gas well does constitute an action to recover for labor and services under § 936. *See ONEOK, Inc. v. Ming*, 962 P.2d 1286, 1287 (Okla. 1998). The court held that in an action to recover the proportionate share of drilling costs, the labor and services were the drilling expenses that the well operator paid and believed to be owed to it by the other alleged well participant. *See id.* at 1288. Citing *ONEOK*, Chesapeake contends it was entitled to attorney fees under § 936 as the prevailing party because its action to recover Valence's proportionate share of the costs of drilling and completing the Fell 1-22 side track well constituted an action for labor or services.

We agree with Chesapeake that the nature of the claim in this case is materially indistinguishable from that in *ONEOK*. Valence contends that *ONEOK* is distinguishable because Chesapeake had already incurred most of the drilling costs at the time the parties entered into the 1995 agreement. Chesapeake's position, however, is no different from that of the well operator in ONEOK, who first drilled the well to completion and then entered into a letter agreement regarding the well with the party against whom it later sought to recover drilling costs. *See id.* at 1287.

Valence also contends that the *ONEOK* decision should not be given retroactive application. However, the court's decision in *ONEOK* represented only a clarification of § 936's attorney fee statute, not a marked change in the

law, and should, therefore, be given retrospective application. *Cf. Taylor v. Chubb Group of Ins. Companies*, 874 P.2d 806, 810 (Okla. 1994) (holding that its newly announced interpretation of an attorney fee statute should be applied retroactively because it changed no preexisting rule of law). Moreover, Oklahoma courts have classified attorney fee statutes as procedural for retroactivity purposes, holding that changes to such statutes are to be applied retroactively. *See, e.g., McCormack v. Town of Granite*, 913 P.2d 282, 285 (Okla. 1996) ("[S]tatutes relating to the award of attorney fees to a prevailing party are procedural, and subject to retrospective operation."); *Qualls v. Farmers Ins. Co.*, 629 P.2d 1258, 1259 (Okla. 1981). Thus, we agree with Chesapeake that *ONEOK* is controlling. Because Chesapeake's suit as the well operator for Valence's proportionate share of drilling costs constituted an action to collect for the cost of labor and services, *see ONEOK*, 962 P.2d at 1287, we conclude Chesapeake is entitled to attorney fees incurred in the district court. Accordingly, we reverse and remand this action to the district court for a determination of a reasonable amount of attorney fees to be awarded to Chesapeake under § 936.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part and REVERSED and REMANDED in part.