**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA and
INTERNAL REVENUE SERVICE,

Plaintiffs,

v.

GAECHTER OUTDOOR
ADVERTISING INC., a New Mexico
corporation,

Defendant Cross-
Claimant-Cross-
Defendant-Appellant,

v.

HARRY GARCIA,

Defendant Cross-
Defendant-Appellee.

Nos. 99-2201
&
99-2212
(D.C. No. CIV-96-83-LH)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

This case involves claims for rent and ownership of property originally owned by Harry Garcia that Gaetcher Outdoor Advertising, Inc. ("GOA") first leased from Garcia and later purchased at a tax sale from the Internal Revenue Service. The district court granted summary judgment to GOA on its claim to ownership of the property, holding that Garcia failed to properly redeem the property following the tax sale. The court then held a bench trial on Garcia's claim that GOA was unjustly enriched by its failure to make rent payments to Garcia or to the IRS under tax levies against Garcia, and the court awarded judgment in favor of Garcia. Both parties appeal. As explained below, we reject most of the parties' contentions of error. However, we conclude the district court needs to further consider GOA's argument that a portion of Garcia's claim is barred by the statute of limitations. We also conclude that the court erred in determining the amount of postjudgment interest to which Garcia is entitled.

The general facts are not disputed. In August and September 1986, GOA and Garcia entered into two three-year leases for a parcel of property Garcia owned in Albuquerque on which GOA constructed two advertising billboards of

differing size. The rent on the lease for the larger billboard was $23,400 per year, and the rent for the smaller one was $1,800 per year. The leases required payment of the first and third years' rents in advance, and GOA made those payments to Garcia.

Around April 1987, before the second year's rents were due, GOA received a notice of levy from the Internal Revenue Service regarding taxes owed by Garcia. Richard Zanotti, GOA's general manager, testified that he understood the levy to require that any rent payments should be made to the IRS, not Garcia, but that he did not understand the levy to be a demand for payment from the IRS. *See* GOA's App. Vol. 2 at 183-84. Although GOA contends it is disputed whether it made the 1987 rent payment, it is undisputed that GOA did not make any payments for use of the property to either Garcia or the IRS from 1989 to 1995, *see id.* at 192-94, even though GOA continued to lease the billboards to third parties, *see id.* at 199-200, and continued to receive IRS levies, *see id.* Vol. 1 at 113, throughout this period.

In April 1995, the IRS seized the property because of Garcia's unpaid taxes, and GOA purchased it at a tax sale on June 7, 1995. Several days prior to the end of the 180-day redemption period for tax sales, Garcia deposited funds with the IRS seeking to redeem the property. In January 1996, the IRS brought this action as an interpleader. Claiming no interest in or entitlement to the funds,

-3-

the IRS filed this action against Garcia, GOA and Charter Southwest Commercial, Inc., to determine who was entitled to the funds and to the deed to the property. (Charter Southwest settled and is not part of this appeal.) GOA answered and filed a cross-claim asserting that Garcia's attempt to redeem was procedurally defective and that it was entitled to the deed to the property. Garcia answered and asserted that he had successfully redeemed the property. He also filed a cross-claim against GOA for unjust enrichment because GOA had failed to pay rent to either the IRS or Garcia.

The district court granted GOA's motion for summary judgment regarding ownership of the property following the tax sale. The court held that Garcia's attempt to redeem was ineffective because he failed to make his redemption payment to the purchaser, GOA, within the redemption period, as required by 26 U.S.C. § 6337(b). Following a bench trial on Garcia's unjust enrichment claim, the court found in favor of Garcia. It awarded him damages totaling $184,946.30 for the rental amounts that GOA failed to pay either Garcia or the IRS for 1987 and 1989 to 1995; prejudgment interest at fifteen percent totaling $381,968.75, and postjudgment interest also at fifteen percent. Both parties appeal.

## I. GOA's Appeal

### A. Statute of Limitations

The district court determined that Garcia's claim was not barred by the statute of limitations or other affirmative defenses because of GOA's "misrepresentations, misconduct, and concealment of material facts." GOA's App. Vol. 1 at 115. Challenging the court's ruling, GOA contends that Garcia failed to prove the elements of fraudulent concealment necessary to toll the statute, that the applicable limitations period is four years, and that Garcia's claim for payments before 1992 is therefore barred.

Though obviously critical to at least part of Garcia's claim, the statute-of-limitations issue was not well-developed by the parties. In its proposed findings of fact and conclusions of law filed before trial, [1] GOA asserted that a four-year limitations period applied to Garcia's claim, [2] but it did not assert that any part of Garcia's unjust enrichment claim was barred by the statute of limitations. *See id.* at 91. In his proposed findings and conclusions, Garcia argued that if any limitations period applied, it would be the six-year period provided by

---

[1]    The parties apparently did not prepare a pretrial order. Before trial, they each submitted proposed findings of fact and conclusions of law and trial briefs, though neither party included the trial briefs in the appendices filed on appeal.

[2]    In relevant part, N.M. Stat. Ann. § 37-1-4 (Michie 1990) provides a four-year limitations period for actions on unwritten contracts and "all other actions not herein otherwise provided for."

N.M. Stat. Ann. § 37-1-3 (Michie 1990) for actions on written contracts.     *See*

GOA's App. Vol. 1 at 97.  The district court apparently raised the doctrine of

fraudulent concealment as a means for tolling the statute sua sponte at trial.  It

subsequently made the following findings of fact relevant to the limitations issue:

> 6.  Following Gaechter's receipt of the Notice of Levy [around April 1987], Garcia meet [sic] with Richard Zanotti (Zanotti), Gaetcher's general manager, and discussed the IRS levy.  Thereafter, Garcia and Gaechter both understood that future lease payments owed by Gaechter to Garcia were required by law to be paid to the IRS.
>
> 7.  Garcia reasonably relied upon Gaechter to pay to the IRS the 1987 payments that were due him.
>
> 8.  Although the initial term of the leases expired in 1989, Garcia and Gaechter understood that they continued unless either party terminated them by oral or written communication.  Neither Garcia nor Gaechter ever communicated to the other party such intention to terminate either lease.
>
> 9.  Garcia knew that Gaechter continued to receive IRS notices of levy regarding his unpaid taxes from 1989-1995 and reasonably relied on Gaechter to pay to the IRS the 1989 through 1995 payments that were due him.
>
> . . . .
>
> 14.  Gaechter willfully decided to make no payments for the use of Garcia's property to the IRS, made no such payments, and consciously concealed this fact from Garcia while continuing to use his property.
>
> 15.  Garcia lacked knowledge until sometime after March 31, 1995, that Gaechter had not remitted its obligations owed him to the IRS.

GOA's App. Vol. 1 at 112-14. The court then stated its legal conclusion that "[d]ue to Gaechter's misrepresentations, misconduct, and concealment of material facts, Garcia's claim is not barred by the statute of limitations, waiver, estoppel, laches, or any other affirmative defenses." *Id.* at 115.

Under principles of equitable estoppel, New Mexico law recognizes the doctrine of fraudulent concealment as a means of tolling a statute of limitations. *See Garcia ex rel. Garcia v. La Farge*, 893 P.2d 428, 432 (N.M. 1995); *see also Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994). A party seeking to toll a statute of limitations through this doctrine must prove that (1) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (2) the injured party reasonably relied on the other party and the concealment was successful; and (3) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action. *See Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993); *Kern ex rel. Kern v. St. Joseph Hosp., Inc.*, 697 P.2d 135, 139 (N.M. 1985). [3]

---

[3] We note that New Mexico courts use both "could" and "should" with respect to the discovery aspect of the doctrine. *Compare Continental Potash*, 858 P.2d at 74 ("could not have known"), *with Kern*, 697 P.2d at 139 (using term "should," but also quoting New Mexico Court of Appeals decision using "could," *Hardin v. Farris*, 530 P.2d 407, 410 (N.M. Ct. App. 1974)). Because the discovery aspect of the doctrine is further modified by requiring the party to have

(continued...)

-7-

GOA contends that Garcia failed to prove the first and third elements.[4] It

claims that it did not make any fraudulent representations and that Garcia could

not rely on its silence regarding its failure to make the payments because there

was no fiduciary relationship between the parties. It further argues that Garcia

failed to show that, through exercise of reasonable diligence, he could not have

known about GOA's nonpayment prior to 1995. In response, Garcia contends that

GOA had a duty to disclose its nonpayment on the basis of either a fiduciary

relationship between the parties or the duty of good faith and fair dealing implied

as part of the leases. He further contends that he is not required to show that he

exercised due diligence in discovering the truth. *See* Garcia's Br. at 14.

We agree with Garcia that GOA had a duty to disclose its nonpayment to

him. Because the district court found that the leases were the result of arm's

length negotiations between the parties, *see* GOA's App. Vol. 1 at 112, we

believe the duty is best characterized as arising not from any fiduciary duty GOA

---

[3](...continued)
exercised reasonable or ordinary diligence, we do not believe the choice of terms
makes a material difference in application of the doctrine.

[4]     GOA also contends that Garcia should not be allowed to benefit from the
doctrine of fraudulent concealment because he failed to plead it. GOA, however,
did not argue in the district court that Garcia's failure to plead the doctrine was
fatal to his statute of limitations defense, *see* GOA's App. Vol. 1 at 104, and we
therefore decline to consider the argument on appeal. *See Sac & Fox Nation of
Missouri v. Pierce*, 213 F.3d 566, 575 (10th Cir. 2000) (issues raised but not
argued in the district court ordinarily not considered on appeal).

-8-

owed to Garcia, but rather from the duty of good faith and fair dealing implied as part of the contracts between them. [5] In *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 976 P.2d 1, 14 (N.M. 1998), the court rejected an argument that implied covenants never require a party to take the affirmative act of disclosing material information:

> The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. We see no reason in law or logic why this duty should always be a negative one; if good faith and fair dealing require it, there can be an affirmative duty to act in order to prevent the denial of the other party's rights under the agreement.

*Id.* (quotation, citation omitted). In *Allsup's*, the court upheld a jury finding that an insurer breached the implied covenant by failing to disclose information relating to inadequate claims handling that increased the insured's premiums. *See id.* Although the issue in *Allsup's* arose in an insurance context, we see no reason not to extend the principle to this situation. Moreover, like *Allsup's*, this is not a

---

[5] Citing cases such as *FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 935 (2000), *Zinn v. McKune*, 143 F.3d 1353, 1360 (10th Cir. 1998), and *Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993), GOA argues that the district court's decision cannot be affirmed on the basis of the implied covenant because Garcia failed to raise that issue below. The waiver rule on which GOA relies applies to appellants' attempts to reverse district court decisions, not appellees' attempts to affirm them. *See Hernandez v. Starbuck*, 69 F.3d 1089, 1093-94 (10th Cir. 1995). Moreover, we have the "free[dom] to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Id.* (quotations, citations omitted).

-9-

situation in which GOA would have had to "bend over backwards" and "subordinate its legitimate interest," *id.*, in the course of disclosing its nonpayment. In a finding unchallenged on appeal, the district court found that "Garcia and Gaechter both understood that future lease payments owed by Gaechter to Garcia were required by law to be paid to the IRS." GOA's App. Vol. 1 at 112. GOA merely had to inform Garcia that it was not complying with that understanding. And GOA had no legitimate interest in using Garcia's property for free.

We disagree, however, with Garcia's contention that he is somehow excused from the due diligence requirement. Under New Mexico law, even in situations involving confidential or fiduciary relationships, the party claiming fraudulent concealment must show that he could not have discovered the relevant facts through exercise of reasonable diligence. *See, e.g.*, *Garcia*, 893 P.2d at 432; *Hardin v. Farris*, 530 P.2d 407, 409-10 (N.M. Ct. App. 1974). Garcia cites no authority to the contrary to support his contention.

GOA contends that Garcia failed to show he could not have discovered that it was not making payments to the IRS. Garcia testified that he had been working with IRS officials to reduce his tax liability since he was audited in 1984 and that he eventually reduced it from nearly half a million dollars to about $30,000. *See* GOA's App. Vol. 2 at 221-23. He also testified that he knew that had GOA been

-10-

making its payments to the IRS as it was required to do, his tax liability, including interest and penalties, would have been lower. *See id.* at 224-25. During the period from 1987 to 1995, he assumed that GOA was paying the IRS, but he never checked to make sure. *See id.* at 225-26. Relying on these facts, GOA contends that had Garcia exercised reasonable diligence during this period, he could have discovered that GOA was not making the required payments.

The existence of the grounds justifying a claim of fraudulent concealment, including whether a party exercised due diligence, is a question of fact. *See Continental Potash*, 858 P.2d at 74; *Kern*, 697 P.2d at 140. We review a district court's factual findings for clear error. *See Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991). The district court did not expressly address the issue of whether Garcia exercised due diligence. The court did address the related matter of Garcia's reliance on GOA to make the payments, and it found that reliance to be reasonable. Because, as indicated above, GOA had a duty to disclose its nonpayment to Garcia, this finding is not clearly erroneous.[6] However, while a finding of reasonable reliance informs the question of the amount of diligence a party may need to exercise, under New Mexico law, it does not fully replace a due

[6] We also note that the district court held that the notices of levy IRS sent to GOA demanded payment from GOA, *see* GOA's App. Vol. 1 at 116, and that failures to comply with such demands are subject to substantial penalties. *See Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1222 (10th Cir. 1998); 26 U.S.C. § 6332(d).

diligence finding.  *Cf. Continental Potash*, 858 P.2d at 74 (noting that party asserting estoppel must show both reasonable reliance and lack of means of discovering truth).

We therefore conclude that the district court erred in applying the doctrine of fraudulent concealment to toll the statute of limitations without finding that, through exercise of reasonable diligence, Garcia should not have discovered his cause of action before the statute ran.  GOA asks that we determine as a matter of law that Garcia should have discovered his cause of action before 1992 because the information was available from the IRS.  It contends that since he did not file his counterclaim until May 1996, his claim for payments prior to 1992 would be barred by the four-year statute applicable to unwritten contracts. [7]

We decline to make this finding for several reasons.  As we noted, the district court found that GOA received the notices of levy and Garcia reasonably relied on GOA to make the payments to the IRS from 1987 on.  This reasonable reliance informs the level of diligence Garcia was obligated to exercise and affects any finding regarding when Garcia should have been on notice that GOA might not be making the payments.  GOA contends that Garcia should have been able to determine readily from the IRS that it was not making the payments, but

---

[7]    GOA contends that because Garcia's claim involves periodic payments, the cause of action accrues and the statute runs from the time each payment was due. *See Plaatje v. Plaatje*, 626 P.2d 1286, 1287-88 (N.M. 1981).

-12-

the only IRS documents it cites in the record are notices of tax liens that include a variety of corrections, indicating that discovering the correct information from the IRS may not have been as simple as GOA supposes. *See* GOA's Exhibits, Ex. A. Finally, the district court never determined what the applicable statute of limitations is. GOA contends that the four-year statute for unwritten contracts applies. But the leases were written, and while the district court found that the initial terms of the leases expired in 1989, it also found that the parties understood that the leases continued until terminated. Thus, there is some question whether the six-year statute for written contracts might apply.

We therefore conclude that we must remand the case to the district court for it to determine when Garcia should have discovered he had a cause of action and whether any part of it is barred by the applicable statute of limitations.

### B. 1987 Lease Payments

GOA challenges the district court's award of damages for its failure to make the 1987 lease payments on two grounds. First, it contends that any damages in this regard would be for breach of contract and Garcia never asserted a claim for breach of contract. Second, it contends that the evidence does not support the district court's finding that GOA did not make these payments.

We decline to consider GOA's first argument because it failed to properly present it to the district court and therefore preserve it for appeal. *See Sac & Fox*

*Nation*, 213 F.3d at 575. GOA contends that it raised the issue in its "additional" proposed findings of fact and conclusions of law filed after the trial. *See* GOA's Opening Br. at 10. In that document, as a proposed *finding of fact*, GOA asserted that "Garcia did not allege in his Cross-Claim or raise at any time in the litigation a claim for breach of contract, pre-judgment interest, post-judgment interest, or a claim for attorneys fees and costs." GOA's App. Vol. 1 at 104. Its proposed conclusions of law did not explain what effect Garcia's failure to assert a breach-of-contract claim might have on Garcia's damages in general or his recovery for 1987 lease payments, nor, obviously, did it provide the district court with any legal authority supporting this position. (In fact, it failed to present any legal authority supporting its position on this issue until its reply brief on appeal.) Similarly, GOA's arguments to the court at trial omitted any reference to this issue, *see id.* Vol. 2 at 170-74, 250-53, 287-302, as did its motion to alter or amend the court's eventual judgment, *see id.* Vol. 1 at 120-21. [8]

---

[8]     GOA had earlier filed its original version of its proposed findings of fact and conclusions of law, *see* Appellant's App. Vol. 1 at 79-85, and then an amended version of that document, *see id.* at 86-92. In neither of these documents did it raise the contract-versus-unjust-enrichment argument it now presents. It did assert, in its proposed conclusions of law, that "[t]he doctrine of unjust enrichment does not apply because there are/were adequate remedies of law and one cannot claim equity when there were other causes of action that accrued and expired through the operation of the statute of limitations and through one's failure to assert." *Id.* at 84, 91. Even were we to consider these documents, our conclusion would remain the same.

We thus conclude that GOA did not adequately raise in the district court the *legal* issue of the effect of Garcia's failure to assert a breach-of-contract claim on his ability to recover damages related to rents due in 1987. *See Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir.) (declining to address issue on appeal presented only in vague, ambiguous way in district court), *modified on other grounds*, 103 F.3d 80 (10th Cir. 1996). Though we have discretion to consider issues on appeal that were not raised in the district court if "proper resolution is beyond doubt or injustice might otherwise result," *Sac & Fox Nation*, 213 F.3d at 575, neither of these reasons encourages us to exercise that discretion here.

GOA is correct that Garcia asserted only an unjust enrichment claim. But New Mexico law does not strictly enforce the general rule on which GOA's argument is based, that is, that "one could not sue on a contract and recover on quantum meruit," *New Mexico ex rel. Gary v. Fireman's Fund Indem. Co.*, 355 P.2d 291, 294-95 (N.M. 1960) (relaxing "strict rule" with respect to pleading requirements). In a situation somewhat analogous to this one, the court permitted a plaintiff's recovery under an unjust enrichment theory despite the existence of an express contract because "his adversary litigate[d] the issue with him on the basis of quantum meruit." *Harbison v. Clark*, 284 P.2d 219, 222 (N.M. 1955). Moreover, GOA can hardly claim injustice from the failure to apply the rule,

-15-

since Garcia's recovery would be the same under either theory. *See United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999) (holding in rejecting similar argument for application of "wooden" rule that "[t]here is no inconsistency whatsoever, in terms of substance, between the plaintiff's recovery on a theory of unjust enrichment and what it would have recovered had the contract theory been pursued"). [9]

Turning to GOA's second argument, that the evidence does not support the district court's finding that it did not make the 1987 payment to either Garcia or the IRS, we review the district court's factual findings for clear error, giving due regard to its opportunity to judge the credibility of witnesses. *See Salve Regina College*, 499 U.S. at 233 (citing Fed. R. App. P. 52(a)). GOA's general manager Zanotti initially stated at trial that he knew GOA did not make the 1987 payments to Garcia but could not recall whether the payments were made to the IRS. *See* GOA's App. Vol. 2 at 187-88. However, he subsequently testified regarding these payments as follows:

> Q.  You made a determination, a willful determination, not to pay
> Mr. Garcia the annual rent for those two leases?

---

[9]    Even GOA, in its argument regarding the appropriate statute of limitations, admitted that "[w]hile Garcia labeled his claim as one for 'unjust enrichment,'" it is essentially based on "an implied-in-law contract or an implied duty to pay based upon Gaechter's continued use of the billboards." GOA's Opening Br. at 20-21.

A.     That's correct.

Q.     And you also made a determination that you had no obligation to pay the United States government that money?

A.     If you want to call it a determination?  I made the decision, yes.

Q.     It wasn't something that you just forgot to do, it was something that you actually decided to do?

A.     That's correct.

*Id.* at 188-89.  The court's finding that GOA did not make the 1987 payments is not clearly erroneous.

### C.  1995 Payment during Redemption Period

GOA next challenges the district court's determination that Garcia was entitled to payment for the period between the GOA's purchase of the property at the tax sale (June 7, 1995) and the expiration of Garcia's redemption period 180 days later (December 4, 1995).  GOA contends that its purchase of the property at the tax sale gave it conditional ownership of the property, and that it was entitled to any income generated by the property during the redemption period.  We conclude the district court correctly found Garcia entitled to payment for this period.

When the government sells seized property under 26 U.S.C. § 6335, it provides the purchaser with a certificate of sale.     *See* § 6338(a).  "In the case of

-17-

real property, such certificate shall set forth the real property purchased, for whose taxes the same was sold, the name of the purchaser, and the price paid therefor." *Id.* For real property, the tax sale purchaser can exchange the certificate of sale for a deed to the property after the 180-day statutory redemption period has expired. *See* § 6338(b). Section 6339(b)(2) provides that the "deed shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto." Thus, in *Babb v. Frank*, 947 F. Supp. 405, 407-09 (W.D. Wisc. 1996), the court rejected arguments, similar to those made by GOA, that the delinquent taxpayer's ownership rights in the property transferred to the purchaser at the tax sale, or even to the government at the time of levy. Instead, it held that under the plain language of § 6339(b)(2), "[t]he tax sale purchaser does not receive the delinquent taxpayer's right, title and interest to the property until he obtains the deed." *Id.* at 407. The district court here relied on *Babb* in holding that Garcia was entitled to payment for the redemption period.

While GOA criticizes *Babb* for not having "thought through" the implications of its holding, GOA does not argue that *Babb*'s statutory analysis is incorrect. GOA cites two cases it claims indicates that the tax sale conditionally transferred title to it and gave it the right of possession. One, *United States v.*

-18-

*Whiting Pools, Inc.*, 462 U.S. 198, 211 (1983), involved personal property, which is governed by different rules from real property. *See* § 6339(a)(2) (certificate of sale transfers taxpayer's right, title and interest in personal property). GOA's other case, *Roig Commercial Bank v. Dueno*, 617 F. Supp. 913, 915 (D. P.R. 1985), is either simply incorrect or, as *Babb* indicates, based on superceded law, *see Babb*, 947 F. Supp. at 408-09. [10]

We are more concerned with a case GOA did not cite but should have, since it is on point and would lead to the result GOA wants. In *United Bank of Denver National Ass'n v. Ferris*, 847 P.2d 146, 149-50 (Colo. Ct. App. 1992), the Colorado Court of Appeals held that state law governs the determination of who is entitled to income on property during § 6337(b)'s redemption period. In so holding, the court relied on a case from this court, *Crow v. Wyoming Timber Products Co.*, 424 F.2d 93 (10th Cir. 1970), to say that "the state court has jurisdiction to determine, in accordance with state law, the rights to and arising from a parcel of real estate redeemed under § 6337(b)." *United Bank*, 847 P.2d at 149. Though under Colorado law, the redeeming owner is entitled to income from

---

[10]     *Doig* stated that "[a] tax-sale certificate transfers title to the purchaser from the moment of the sale," citing *S.R.A. v. Minnesota*, 327 U.S. 558, 567 (1946), which in turn relied on *Van Brocklin v. Tennessee*, 117 U.S. 151, 179 (1886). *Doig*, 617 F. Supp. at 915. Section 6339(b)(2), stating that the deed obtained in exchange for the certificate of sale transfers title, was part of the Internal Revenue Code of 1954.

the property during the redemption period, *see id.* at 150, the opposite result would obtain under New Mexico law, *see* N.M. Stat. Ann. 39-5-22 (Michie 1991); *Western Bank v. Malooly*, 895 P.2d 265, 273 (N.M. Ct. App. 1995). The question now becomes whether state law governs this issue.

With all due respect to the Colorado court, we believe it read too much into *Crow*. There, we held that state law "rather than federal law determines the nature and extent of the taxpayer's interest in property to which a federal tax lien can attach." *Crow*, 424 F.2d at 96. The fact that state law governs a taxpayer's substantive property rights does not mean that state law dictates when those rights are transferred to a purchaser under federal procedures governing tax sales, or more specifically, what the legal effect is of a certificate of sale issued pursuant to § 6338 of the Internal Revenue Code.

We admit to being surprised at the absence of case law answering the latter question. State law gives differing effects to analogous sales. *See* 4 Richard R. Powell, *Powell on Real Property* § 37.46 (Rev. ed. 1997); 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 562, 580 (1994). But we see no reason to apply state law because we conclude the applicable federal statutes answer the question. We hold that a certificate of sale for real property gives the purchaser only the right to receive either the redemption price, *see* § 6337(b), or a deed, *see* § 6338(b), and that only on receipt of the deed does the purchaser obtain

-20-

the taxpayer's right, title and interest in the property, *see* § 6339(b). *Cf.*

*Sari-Tech Enters., Ltd. v. Nassau County*, 310 N.Y.S. 2d 107, 109 (N.Y. Sup. Ct.

1970) ("[U]ntil the deed is received [under § 6339(b)], a purchaser at the tax sale

has no cognizable interest in the real property, but possesses merely a chose in

action."). We thus conclude that the district court correctly found Garcia entitled

to the lease payments for the period of redemption.

### D. Prejudgment interest

GOA contends that the district court erred in awarding Garcia prejudgment

interest of fifteen percent pursuant to N.M. Stat. Ann. § 56-8-3(B) (Michie 1996),

which provides for a maximum of fifteen percent interest "on money received to

the use of another and retained without the owner's consent expressed or

implied." The award of prejudgment interest is a matter of state law. *See*

*Chesapeake Operating, Inc. v. Valence Operating Co.*, 193 F.3d 1153, 1156 (10th

Cir. 1999). Under New Mexico law, the award of prejudgment interest is a

matter of right, subject to equitable considerations, when the amount due is fixed

and ascertainable, and a matter of the court's discretion when it is not. *See*

*Taylor v. Allegretto*, 879 P.2d 86, 89 (N.M. 1994); *Sunwest Bank of Albuquerque,*

*N.A. v. Colucci*, 872 P.2d 346, 350-51 (N.M. 1994). Finding the amount due here

fixed and ascertainable and no countervailing equities, the district court

determined that Garcia was entitled to prejudgment interest as a matter of right. *See* GOA's App. Vol. 1 at 126-27.

GOA first contends that the judgment Garcia obtained does not qualify him for prejudgment interest under the statute because his claim was for GOA's failure to pay the IRS, not himself. The district court found this argument "disingenuous, at best." *Id.* at 126. We need say only that it is clearly without merit. Prejudgment interest under § 56-8-3(B) "constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of earning power of the claimant's funds)." *Sunwest Bank*, 872 P.2d at 350. As the court explained in *Taylor*, a judgment based on unjust enrichment or quantum meruit is a valid basis for an award of prejudgment interest under § 56-8-3(B):

> [W]hen a person is found to be liable in quantum meruit the factfinder has made, in essence, a determination that the person has received the benefit of money expended, or services or material provided, by another, and has not paid over that money (or the value of the services or materials) to the person entitled to reimbursement. Thus the person has retained the money due and has deprived the claimant of the opportunity to use the money.

879 P.2d at 89. The district court's decision was based on its conclusion that GOA owed money to Garcia that, due to the tax liens, was payable to the IRS. As the district court explained, Garcia "lost the opportunity of the benefit of having

-22-

these monies timely credited toward the taxes he owed IRS," Appellant's App. Vol. 1 at 126, and thus fell within the purview of the statute. We agree with the court's analysis. To the extent GOA contends the court erred because Garcia's pleading did not seek prejudgment interest, we note that such specific pleading is not required. *See Taylor*, 879 P.2d at 88.

GOA also contends that it was inequitable for the court to award prejudgment interest sua sponte. GOA was able to address this issue in a postjudgment motion, and the court considered its arguments. We see no abuse of discretion in the court's award of prejudgment interest. *See Chesapeake Operating*, 193 F.3d at 1156.

### E. Postjudgment interest

The district court computed postjudgment interest pursuant to N.M. Stat. Ann. § 56-8-4(A) (Michie 1996). GOA contends the district court erred by awarding postjudgment interest pursuant to state law rather than federal law. We agree. *See Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*, 891 F.2d 772, 780 (10th Cir. 1989). We therefore vacate the court's award of postjudgment interest, and remand for a redetermination pursuant to 28 U.S.C. § 1961.

### II. Garcia's Cross-Appeal

Garcia appeals from the district court's determination, on GOA's motion for summary judgment, that Garcia failed to redeem the property in accordance with 26 U.S.C. § 6337, and that GOA was therefore entitled to the deed to the property at the end of the redemption period. We review the district court's grant of summary judgment de novo, applying the same standards the district court did under Fed. R. Civ. P. 56. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Rule 56(c)).

Section 6337(b)(2) provides that real property sold pursuant to § 6335 may be redeemed by the original owner, or certain others,

> upon payment to the purchaser, or in the case he cannot be found in the county in which the property to be redeemed is situated, then to the Secretary, for the use of the purchaser . . . , the amount paid by such purchaser and interest thereon at the rate of 20 percent per annum.

The property is located in Albuquerque, which is in Bernalillo County. The certificate of sale listed the purchaser as "Gaechter Outdoor Advertising, Inc." and its address as "P.O. Box 13059, Albuquerque, NM 87192." GOA's Suppl. App. at 25. In response to GOA's requests for admissions and in its opposition to

-24-

GOA's summary judgment motion, Garcia admitted that in 1995, GOA's "business office was located in Bernalillo County at 3540 Pan American Freeway NE, Albuquerque, New Mexico 87110," and that GOA's registered agent's office was also located in Albuquerque. *See id.* at 1; Appellant's App. Vol. 1 at 33; *id.* Vol. 2 at 147, 149. In attempting to redeem the property, Garcia paid the apparently correct amount to the Secretary, through the local IRS office, several days prior to the end of the redemption period. It did not pay GOA, though it notified GOA by fax that it had paid the IRS. The district court determined that because GOA could be "found" at the post office box listed on the certificate of sale, Garcia was required to make his redemption payment to GOA at that address. It concluded that Garcia's payment to the IRS was therefore ineffective to redeem the property.

On appeal, Garcia contends that the district court was wrong in holding that he was required to send his payment to GOA's post office box. He concedes, however, that this issue is not dispositive because the question remains "whether the district court's decision was nonetheless correct, albeit for the wrong reasons. Thus, this Court must decide whether Gaechter could have been 'found' in Bernalillo County for purposes of paying the redemption funds." Garcia's Br. at 27. He contends that there was some question as to GOA's legal status and address and that GOA failed to respond to his counsel's telephone calls seeking to

clarify this information. Relying on *Guthrie v. Curnutt*, 417 F.2d 764 (10th Cir. 1969), Garcia argues that GOA's purposeful refusal to return his telephone calls frustrated his efforts to "find" GOA in the county, and therefore relieved him of his obligation to pay GOA. *See id.* at 766 (holding that where purchaser purposefully avoided owner in effort to prevent redemption, purchaser would be considered "not found" in county where property was situated).

We begin our analysis by first noting that none of the authority Garcia cites, *see Fitshugh v. Ryles*, 517 F. Supp. 1361 (E.D. Ark. 1981); *Silver Bell Indus., Inc. v. United States*, No. C-4168, 1974 WL 653 ( D. Colo. July 25, 1974), supports his contention that a purchaser cannot be "found" under § 6337(b) at a post office box address. While we have no reason to disagree with the district court's conclusion regarding this matter, we note we have not located authority one way or the other. In any event, we need not address the issue since Garcia concedes it is not dispositive of the appeal. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (court of appeals may affirm district court's ruling for any reason supported by record).

The dispositive issue is whether GOA could be found in Bernalillo County. However, we also need not address Garcia's argument based on *Guthrie* that GOA should not be considered "found" in Bernalillo County because of its purposeful acts to frustrate his effort to verify its status and address. He failed to make this

argument in the district court. *See Sac & Fox Nation*, 213 F.3d at 575. In the district court, Garcia argued that because his counsel was uncertain as to GOA's proper legal status and address, it was reasonable for him to "constructively pay" GOA by making the redemption payment to the IRS. GOA's App. Vol.1 at 38-42, *id.* Vol. 2 at 147-58. Even were we to consider his appellate argument as pursuing this contention, we would find it unpersuasive. As noted above, Garcia admitted that GOA could be found at a Bernalillo County address. There being no disputed issue of fact regarding this issue, we conclude the district court correctly granted summary judgment to GOA on the redemption issue.

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

David Ebel
Circuit Judge

-27-